UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS LUBAHN,

     Plaintiff,

                                  Case No. 16-14425

v.

                                  HON. DENISE PAGE HOOD

ABSOLUTE SOFTWARE, INC.,

     Defendant.

_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT [#29]

## I. INTRODUCTION

On December 21, 2016, Plaintiff Douglas Lubahn filed the instant action alleging that Defendant discriminated against him, in violation of the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.201 *et seq.* ("ELCRA"), when Defendant terminated him on the basis of his age. On August 2, 2018, Defendant filed a Motion for Summary Judgment. [Dkt. No. 29] The motion has been fully briefed, and a hearing was held on October 17, 2018. For the reasons that follow, the Court denies Defendant's Motion for Summary Judgment.

## II. STATEMENT OF FACTS

Defendant provides cybersecurity solutions to clients throughout the United States. In 2007, Plaintiff, who was 59 years old at the time he was terminated, began working for Defendant in the division that became Defendant's "Investigations Organization." Plaintiff was

1

hired as a Law Enforcement Liaison/Theft Recovery Officer, and he held that position for five years before being promoted to Regional Director North Central. As Regional Director North Central, he supervised a team of investigators and law enforcement liaisons. In 2014, Plaintiff also added the position of Director of Healthcare Investigations.

In 2014, Defendant hired Geoff Haydon as its Chief Executive Officer ("CEO Haydon"). In 2016, Defendant's Chief Financial Officer was Errol Olsen ("CFO Olsen"), and Matt Meanchoff ("Meanchoff") was Defendant's Vice President of Professional Services and head of the Investigations Organization. Kevin Golas ("Golas"), who was Defendant's Senior Director of Investigations and Risk Management, reported to Meanchoff.

CFO Olsen states that reducing the size of the Investigations Organization "was part of Defendant financial plan for fiscal 2017, as CEO Haydon and CFO Olsen wanted to "hit[] certain financial targets" that were "directed by both investor expectations and [Defendant's] board of directors." Dkt. No. 29, Ex. 2 at 16. CFO Olsen represents that "business was beginning to decline and we had to make some changes in order to maintain the profitability of the overall business to align our expense structure with our expected revenue." *Id*. at 17. Olsen and Haydon solicited input from relevant management officials so that they could "understand what the impact [of a workforce reduction] might be." *Id.* at 16. The head of the sales team indicated that reducing the size of the Investigations Organization "would not have a material impact on sales." *Id*. at 9, 16.

According to Meanchoff, CEO Haydon and CFO Olsen "ma[de] an organizational strategy shift to focus less on the laptop recovery aspect of [the] organization," and "more" on "cyber security." Dkt. No. 29, Ex. 3 at 8. Meanchoff determined that the Investigations Organization should be reorganized for "multiple reasons" to align with Defendant's strategic plan, and he was given a budget and was tasked with meeting it. *Id*. at 20, 35; *see also* Ex. 2 at 17-18. Meanchoff claims there was too much manpower for the amount of work, and the company was "making changes strategically to increase [its] cyber security capabilities which were not present in many of the individuals within [the Investigations Organization] team." Dkt. No. 29, Ex. 3 at 20-21.

In consultation with Meanchoff, Golas recommended who would be laid off and who would be retained based on his knowledge of the employees comprising the Investigations Organization. Dkt. No. 29, Ex. 3 at 29. Meanchoff did not tell Olsen which positions would be eliminated, as Meanchoff did not "go to that level of detail" with Olsen. Dkt. No. 29, Ex. 2 at 19. Twelve (12) positions in the Investigations Organization were eliminated, including Plaintiff's position. One of those 12 employees voluntarily retired in exchange for a severance package, so there were 11 employees involuntarily laid off as part of what Defendant has termed a workforce reduction and reorganization. CFO Olsen stated that the "one-third reduction of our laptop investigations team" and "departmental adjustments" was aimed at "align[ing] our internal structure with our strategic direction" and "continu[ing] to optimize productivity throughout the organization." Dkt. No. 29, Ex. 6 at 13. CFO Olsen elaborated that the reduction "is something

that was built into our corporate plan for the year and into the guidance that we gave at the start of the year." *Id*. at 18-19.

As to Plaintiff, Meanchoff and Golas state that customers had not ever used the specific HIPAA-forensics report component of "DDS For Healthcare," the software product that Plaintiff "spen[t] the vast majority of his time focused on trying to build and promote."*Id.* at 22-23. Plaintiff has admitted that the HIPAA forensics report was not used during his tenure at Defendant. Dkt. No. 29, Ex. 6 at 137-38. Meanchoff stated "the decision [was] made that what [Plaintiff] was doing was just not needed." Dkt. No. 29, Ex. 3 at 23; *see also* Ex. 4 at 32-33. After Plaintiff's position was eliminated, the company phased-out the DDS For Healthcare service. Dkt. No. 29, Ex. 3 at 23-24. Defendant contends that any of Plaintiff's duties that were not eliminated were redistributed to four existing employees: Sarah Brooks (age 43), Jeff Gambrell (age 54), Brad Martin (age 61), and Mike Perez (age 54).

## III. APPLICABLE LAW

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

### A. Legal Standards for ELCRA Claims

For an ELCRA claim, Michigan law applies. Under ELCRA, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was subject to an adverse employment decision; (3) he was qualified for the position he held; and (4) he was replaced by someone outside the protected class, such that it supports an inference of discrimination. *See, e.g., Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523-28 (6th Cir. 2008); *Tuttle v. Metro. Govt. of Nashville*, 474 F.3d 307, 317 (6th Cir.

2007). Under ELCRA, a plaintiff must ultimately prove that the defendant's discriminatory animus was a 'substantial' or 'motivating' factor in the decision." *Provenzo v. LCI Holdings, Inc.*, 663 F.3d 806, 818 (6th Cir. 2011) (citing *Sniecinski v. BCBS of Mich.*, 469 Mich. 124 (2003)). *See also Hazle v. Ford Motor Co.*, 464 Mich. 456, 466 (2001) (citing Michigan Civil Jury Instruction 105.02 ("The plaintiff must prove that he was discriminated against because of [age] . . . [age] does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference")).

If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973). Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805.

A plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) ("A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not

actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct"). *See also Harris v. Metro. Govt. of Nashville and Davidson Cnty., Tenn.*, 594 F.3d 476, 486 (6th Cir. 2010); *Dubey v. Stroh Brewery Co.*, 185 Mich.App. 561, 565-66 (1990). A plaintiff must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Harris*, 594 F.3d at 486. A plaintiff cannot establish a *prima face* case of discrimination based on vague, ambiguous or isolated remarks. *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000) (citation omitted).

Defendant argues that, according to the Sixth Circuit (when analyzing an Age Discrimination in Emloyment Act claim), "a plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991); *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986); *Plieth v. St. Raymond Church*, 210 Mich.App. 568, 574 (1995). Michigan courts, however, have established a different standard:

> To establish a prima facie case of age discrimination when an employer lays off employees for economic reasons, the courts have required the employee to present sufficient evidence on the ultimate question—whether age was a determining factor in the decision to discharge the older protected employee.

*Matras v. Amoco Oil Co.*, 424 Mich. 675, 684 (1986); *Meeka v. D&F Corp.*, 158 Mich. App. 688, 692 (1987) ("In order to establish a prima facie case of age discrimination, plaintiff must

7

present evidence that (1) he had skills, experience, background or qualifications comparable to other employees who were not laid off, and (2) age was a determining factor in defendant's decision to lay plaintiff off."). *See also Featherly v. Teledyne Industries, Inc.*, 194 Mich. App. 352 (1992).

## B.    Analysis

Defendant does not dispute the first three elements of Plaintiff's prima facie age discrimination claim are satisfied, as he: (a) is a member of a protected class (age 59); (b) was subject to an adverse action when he was terminated; and (c) was qualified for the position he held, as it is undisputed that he had performed for over nine years for Defendant, holding duties such as overseeing a team of law enforcement investigators over a 14-state region. Defendant argues that it is entitled to summary judgment because: (1) "most of [Plaintiff's] duties were redistributed to four existing employees," such that Plaintiff was not replaced; and (2) Plaintiff cannot satisfy the modified fourth element of his prima facie case in this reduction in force case. Dkt. No. 29, PgID 191 (citing *Lytle v. Malady*, 458 Mich. 153, 178 n.27 (1998)). Defendant contends that, as this is a reduction in force case, Plaintiff must offer "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [him] out for discharge for impermissible reasons." *Geiger*, 579 F.3d at 622; *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

For the reasons that follow, the Court rejects Defendant's arguments and denies

Defendant's Motion for Summary Judgment. The Court finds, as Plaintiff has contended, that there is "both statistical and circumstantial evidence to create a factual question regarding Defendant's motivation" for terminating Plaintiff. *See* Dkt. No. 37, PgID 494.

Defendant argues that: (1) Plaintiff did not hear anyone say anything derogatory about age; (2) there is no evidence that the two persons involved in the decision to terminate him (Meanchoff and Golas) made any derogatory remarks about age; (3) any comments by CEO Haydon (including an alleged "over the rainbow" comment noted below) constituted stray remarks, not evidence of discrimination, especially as it was made approximately 18 months prior to Plaintiff's termination; and (4) CFO Olsen's concern over the advancing age of the Investigations Organization was inadmissable hearsay, speculation, and was related to death of an employee more than six months before Plaintiff was terminated.

When the evidence is viewed in a light most favorable to Plaintiff (as it must be for purposes a summary judgment motion), the Court is not persuaded by Defendant's arguments. First, there is no requirement that a plaintiff must hear anyone make a derogatory comment or statement regarding age to establish a prima facie case of ELCRA age discrimination. Second, there is no requirement that the decisionmaker must make a derogatory statement or comment regarding age to establish a prima facie case of ELCRA age discrimination to support an ELCRA age discrimination claim.

Third, there were numerous age-related statements made by Defendant's executives.

Ward Clapham, former Vice President of Investigations for Defendant, testified that: (a) CEO Haydon and CFO Olsen commented on "the overall age of my [Clapham's] team," Dkt. No. 37, Ex. 4 at 15, 34; and (b) Clapham "felt [he] had to defend [his] team and their age from a whole bunch of different perspectives, including the fact that they could be released because they were getting older and they were costing money." *Id.* at 34.

Lyle Singular, Defendant's Vice President of Recovery Services (which later became the "Investigations Organization") for Defendant from 2005 to 2011 and subsequently an advisory contractor until August 2016, testified that CFO Olsen and other executives would make comments about team members' ages. Dkt. No. 37, Ex. 5 at 14, 28, 39, 41 ("The observations were, of course, that these individuals were older;" "I felt there was always a challenge of having to justify or explain why we were hiring these [older] individuals in the first place and inevitably a discussion of age crept into it;" and "it was pretty clear implication that these individuals that were viewed as obviously age challenged, needed to go.").

Mary VanBrunt Piehler ("Piehler"), Defendant's Director of Sales for the Northeast Region from November 2010 to July 2015, testified that Thomas Kenny ("Kenny"), Defendant's Executive Vice President of Worldwide Sales, stated at a conference of managers that: "Haydon, the CEO had told [Kenny] that we needed to get rid of employees that were at the end of their rainbow and that we needed to hire athletes who would get in each others faces and trash talk." Dkt. No. 37, Ex. 6 at 9. Piehler also testified that Kenny had asked her if she felt an older

employee Piehler had hired "still had any steam left." *Id.* at 13.

Although much the testimony noted above consists of hearsay, Defendant's argument that it is inadmissible hearsay is misplaced. The testimony cited above consists of the speaker's knowledge or identifies things that were said by Defendant's representative(s) and, therefore, are party admissions that consitute admissible hearsay. The comments made by CEO Haydon and CFO Olsen also are not stray remarks. A reasonable factfinder could conclude that those comments by the leaders of the company, which were not made in isolation, established a culture or signaled a direction of the company, such that Defendant's decisionmakers understood CEO Haydon's and CFO Olsen's remarks to mean that older employees should be terminated during Defendant's workforce reduction.

Defendant also contends that the following facts justify entry of summary judgment: (a) Defendant retained three employees older than Plaintiff (citing *Anderson v. Otis Elevator Co.*, 923 F.Supp.2d 1032, 1056 (E.D. Mich. 2013) ("A plaintiff cannot establish that the employer's stated reason for termination did not actually motivate the decision where the employer actually retained employees of roughly the same age as plaintiff"); *Kraemer v. Luttrell*, 189 F.App'x 361, 368 (6th Cir. 2006) (qualified African-American employee seeking a promotion to lieutenant could not state a claim for failure to promote when three other members of the same protected class received promotions to lieutenant); (b) the reduction in force age differential is 4.52 years, less than the six years found legally insignificant in *Anderson*, F.Supp.2d at 1063 n.11; and (c)

11

Gambrell was only five years younger than Plaintiff, an age difference insufficient as a matter of law to be a viable comparable (citing *Anderson*, 923 F.Supp.2d at 1073-74 ("five year age difference is not significant enough . . . to meet the fourth prong of a *prima facie* claim of age discrimination under even the less stringent standard applicable in non-RIF cases")).

Although Defendant accurately cites the *Anderson* and *Kraemer* cases, the instant case is distinguishable from both of them, particularly as Defendant's contentions do not take into consideration certain relevant evidence. In this case, and unlike *Anderson*, the median age of the employees terminated on October 11, 2016 was 59 years old. The median age of those retained and hired is 52. That seven-year differential makes it "more likely the possibility that age played a part in" employment decisions. *See Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1129 (6th Cir. 1998); *Featherly*, 194 Mich.App. at 360-61. The seven-year age differential is different and more significant than the 4.5 year difference between the average age of the Investigations Organization employees involuntarily laid off and the average age of the Investigations employees immediately before the layoffs cited by Defendant. Defendant's reliance on the age of Gambrell as the person replacing Plaintiff is not persuasive, as Brooks – who Golas also stated replaced Plaintiff – was 16 years younger than Plaintiff in October 2016.

In *Kraemer*, "the percentage of officers promoted who were black (33%) was higher than the percentage of black officers eligible for promotion (21%)" and "50% of the eligible black officers were promoted, whereas 27% of the eligible non-black officers were promoted."

12

*Kraemer*, 189 F. App'x at 368 n.8.  Unlike the protected class of the plaintiff in *Kraemer*, for which the percentage of promotions was overrepresented in relation to its members, in this case the members of Plaintiff's protected class were disproportionately terminated.  Although Defendant correctly notes that three of the 19 retained employees were older than Plaintiff, Defendant does not mention that: (1) nine employees were less than nine years younger than Plaintiff, and seven of the employees were younger than 50; and (2) of the 11 employees involuntarily terminated, nine (including Plaintiff) were 58 years old or older (including at least four who were older than Plaintiff), one was 49, and one was 47.

The following table shows the status of Defendant's Investigations Organization employees on October 11, 2016, once the involuntary terminations were made:

| Employees who were: | Retained | Terminated |
| --- | --- | --- |
| **58 and older** | **4** | **9** |
| **50-57** | **8** | **0** |
| **Under 50** | **7** | **2** |

As the numbers in the above table reflect, for Investigations Organization employees 58 and older, about 31% were retained and 69% were terminated, but for Investigations Organization employees under 50, nearly 78% were retained and 22% were terminated.  So, even though Defendant may have retained three employees older than Plaintiff, *Anderson* is not controlling because the statistics in this case exhibit a difference in how Defendant treated older employees

and younger employees. The Court finds that these statistics may constitute evidence that Defendant was terminating employees because they were older. And, the Court notes that, although disputed, there is evidence that another member of the Investigations Organization (Clapham) was replaced by someone substantially younger (Golas) only three months before Plaintiff was terminated.[1]

For the reasons set forth above, the Court concludes that Plaintiff has presented evidence sufficient to establish a prima facie claim of age discrimination under ELCRA, even if the termination was pursuant to a reduction in force.

The Court finds that Defendant has offered a legitimate, non-discriminatory basis for terminating Plaintiff. Defendant has represented that it was undertaking a workplace reduction/reduction in force in the Investigations Organization. There is evidence that Defendant intended to reduce expenses for fiscal year 2017, and it is undisputed that 12 of the 31 employees in that department were laid off on or about October 11, 2016. Defendant also has represented

---

[1]Defendant also claims that it is entitled to summary judgment because the retention and promotion of Gambrell and Brooks had nothing to do with qualifications. Defendant represents that they assumed Plaintiff's duties because Plaintiff was terminated because of the health care work he was doing. Defendant also dismisses Plaintiff's view that he was more qualified than three other employees (f/k/u Smith, McGlenn, and f/k/u Henderson) as subjective and irrelevant. Defendant states that Smith and Henderson did not work in the Investigations Organization, and Plaintiff did not know what duties McGlenn performs. Even if Defendant is correct on these two issues, the Court finds that they are not dispositive of Plaintiff's age discrimination claim.

that Plaintiff was selected because part of his job duties related to developing a "DDS For Healthcare" software product, and Plaintiff has admitted that software product was not utilized during Plaintiff's employment.

The Court finds that Plaintiff has submitted sufficient evidence that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff was pretextual. Nearly 70% of employees in the Investigations Organization over the age of 58 were terminated (and only about 30% of employees over the age of 50 were retained), whereas almost 78% of the employees in the Investigations Organization under the age of 50 were retained (and only about 22% of employees under the age of 50 were terminated). This disparity in treatment of employees of different age groups may show that Defendant's legitimate, non-discriminatory reason for termination was mere pretext.

Two other things may constitute evidence that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff was only pretext. Defendant has asserted that it was trying to reorganize the Investigations Organization because, at least in part, "we [the Investigations Organization] had too many managers." As evidence of that, Defendant argues that it terminated three managers from the Investigations Organization (including Plaintiff) in October 2016. But, as Golas testified, Brooks and Gambrel were "promoted . . . to management level positions" after Plaintiff was terminated. Dkt. No. 37, Ex. 11 at 20. So, before Plaintiff was terminated, there were five Directors, and after Plaintiff was terminated, there were two Directors

and two Managers (and possibly a third manager).[2] *Id.* The fact that management of the Investigations Organization was not reduced at all, or was ultimately reduced only from five persons to four, may constitute evidence that Defendant's proffered reasoning was pretextual. Defendant also asserts that Plaintiff's duties were assumed by four other employees, but Golas's testimony that Brooks and Gambrel were "promoted . . . to management level positions" may contradict that assertion.

For the reasons set forth above, the Court denies Defendant's Motion for Summary Judgment.

## V.    CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [Dkt. No. 29] is DENIED.

IT IS FURTHER ORDERED that the Motion for Protective Order [Dkt. No. 31] and the Motion to Amend/Correct Scheduling Order [Dkt. No. 33] are MOOT.


                                    s/Denise Page Hood_____
                                    DENISE PAGE HOOD
Dated: October 31, 2018             UNITED STATES DISTRICT JUDGE

---

[2]It is unclear whether another manager hired after Plaintiff's termination, Mark McGlenn, became a manager in the Investigations Organization or a different division of Defendant. *Id.* at 35-36.

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager